## Calhoun, Appellant, v. Holland Laundry.

*Negligence—Master and servant—Defective machinery—Laundry—Province of court and jury.*

In an action by a woman against her employer, a laundry company, to recover damages for personal injuries, the case is for the jury where the evidence for the plaintiff, although to some extent contradicted, tends to show that at the time of the accident plaintiff was ironing shirts on a bosom board, which rested upon rollers used to pass the board under a hot cylinder; that upon the board was a neck clamp which was in a defective condition, so that plaintiff was compelled to use her hand on the board; that the engine which operated the machine was out of order and ran in jerks; that plaintiff had complained to the superintendent not only as to the defective condition of the neck clamp, but also as to the condition of the engine; that the superintendent had promised to remedy the defects, and directed her to go ahead, but that he did not remedy the defects; that at the time of the accident, when her fingers were upon the board, the engine gave a jerk, and her hand was suddenly caught under the cylinder before she knew it.

Argued Jan. 4, 1904. Appeal, No. 114, Jan. T., 1903, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1900, No. 337, on verdict for defendant in case of Jennie Calhoun v. Holland Laundry. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass for personal injuries. Before McCARTHY, J.

The circumstances of the injury are fully detailed in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Horace M. Rumsey*, with him *William F. Brennan*, for appellant.—If the superintendent of appellee was negligent in any particular, then the defendant company is bound by his negligence : Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617 ; Ricks v. Flynn, 196 Pa. 263 ; Casey v. Penna. Asphalt Paving Co., 198 Pa. 348 ; Hughes v. Leonard, 199 Pa. 123 ; Patterson v. Pittsburg R. R. Co., 76 Pa. 389.

When the servant, in obedience to the requirement of the master, incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution, the master is liable for an accident : Mansfield Coal Co. v. McEnery, 91 Pa. 185 ; Brownfield v. Hughes, 128 Pa. 194 ; Reese v. Clark, 198 Pa. 312 ; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543 ; Williams v. Clark, 204 Pa. 416 ; Shafer v. Lacock, 168 Pa. 497 ; Dixey v. Phila. Traction Co., 180 Pa. 401.

The liability of an employer for an accident to an employee, under the conditions which prevail in the case at bar, may also be found in Bennett v. Standard Plate Glass Co., 158 Pa. 120, and Sopherstein v. Bertels, 178 Pa. 401.

*Harvey Gourley*, with him *Henry Clay Remick*, for appellee.— The case of Higgins v. Fanning & Company, 195 Pa. 599, is nearly on all fours with the case at bar.  See also Lawson v. American Steel & Wire Co., 204 Pa. 604.

OPINION BY MR. JUSTICE THOMPSON, February 15, 1904 :

The appellant was employed in appellee's laundry, and while working upon a machine known as the Stone bosom ironer was injured and for this injury the present action was brought.

The machine at which she was working consisted of a bosom board resting upon rollers which passed it under a hot cylinder. This board was covered with iron and over that was a rubber covering and also one of felt and finally one consisting of four or five plies of muslin.  To it was attached a rod that ran to the lower part of the machine, operated by a key, which was

used for the purpose of regulating pressure. The machine was operated by a treadle which moved a belt fastened on pulleys which ran the shafting connected with the machine at the small end of the revolving cylinder. Power was furnished by an engine placed in the cellar of the building. Upon the ironing board was a neck clamp intended to hold the neck band and two yoke clamps to catch the shirt beneath on either side. The purpose of the clamps was to hold the shirt adjusted in place while in process of ironing.

While engaged at work appellant's hand was suddenly caught beneath the cylinder and injured, and she contends that appellee's negligence caused the accident and sprang from the defective character of the clamps on the bosom board, about which she had made complaint to appellee's superintendent who had promised to fix it, and in consequence of his directions she was compelled to use her left hand in ironing the shirt, resulting in the accident. That the key regulating the rod had been taken away and that she was thus prevented from using it. That it was used for regulating the rod running to the bosom board and had been taken away by the superintendent and she was unable to stop the machine at the time of the accident, and if the key had been there she would have operated under high pressure and her hand would not have been caught under the hot cylinder. That the engine which was in the cellar was out of order and in consequence the machine at which she was working ran in jerks, which made the roller go faster and carried the bosom board in "quicker," and that the unsatisfactory movement of the bosom board was caused because the engine was out of order and that this condition was known to the appellee.

In support of her contention appellant testified that the neck clamp was in front and caught the front of the shirt. That it was about one quarter of an inch below the bosom board; that when the shirt was properly fastened by the clamps it was not necessary for her to use her hands. That she had much trouble because she was compelled to use her fingers as the clamp would not hold the shirt and that she had complained to the superintendent who had full charge and control of appellee's laundry and that the reason the neck clamp would not work she testified to be that it was too low set and that it was set down so

low that it would not catch the neck band of the shirt and this was due to the heavy piece of felt placed upon it; that she wanted the clamp fixed because there was such light pressure on the board when she wanted to use it and she told the superintendent that when she was not able to use the clamp she had to use her fingers and he promised that he would fix the clamp ; that she complained about it on the morning of the accident and some time before and that he stated to her that when he had leisure he would fix the clamp, but that he never had done so; that she desired the key regulating the pressure ; that he took it away and stated that he would regulate the pressure ; that the machine ran in jerks fast and slow, and that she complained to the superintendent and he said that it would run all right and that the engine would run satisfactorily ; that if the key had been attached to the machine at the time of the accident by using it the bosom board would have dropped and her hand would have come out; that the machine was running at a light pressure and such pressure helped to draw the hand in with the jerking of the engine ; that if there had been high pressure there it would not have carried her fingers in.    That if the pressure had been high it would not have been possible for her fingers to have passed under the cylinder ; and that on the day in question the machine was running at a very light pressure.

Upon cross-examination she testified that light pressure caused her hand to get caught and the engine running in jerks. As to the cause of the accident she testified that she had just started to iron and that her fingers were upon the board and that the roller was just moving over and had caught right at the neck band and the engine giving a jerk her hand was in before she knew where it was.    That by reason of the sudden jerk caused by the engine, the board and her hand beneath, at the same time went under the cylinder.    That the engine jerked that morning and she complained to the superintendent and he told her to go ahead and it would be all right and three quarters of an hour afterward the accident occurred ; that the clamp was too low set because of the padding and that she used her hand to keep the shirt smooth because the clamp did not work right.    That she never worked where the clamp did not hold unless she had very high pressure.    That the superintend-

ent covered the ironing board with pads the morning of the accident and that he did so because the appellant had a lot of work to do and he said that he would fix the machine; that the cause of the accident was the light pressure and the engine running in jerks.   That at the time of the accident her hand was about four inches from the cylinder; that the clamps were set too low and the padding was too high for the clamps.   That the superintendent told her the engine was out of order. That if the key had been there she could have regulated the pressure and run the machine at high pressure and running it at high pressure the accident would not have taken place.

To rebut the presumption of negligence arising from this evidence, the appellee called the manufacturer of the Stone ironing machines and he testified as to the character of the machine, the uses of the key, the number of turns necessary to raise the board; that the key is used for the purpose of adjusting differences of padding and pressure; the position of the clamp and its projection above the surface of the board and that all laundrymen did not pad their machines alike.

The secretary of the company was called and he testified as to the general condition of the machinery on the day of the accident.   That he was not there at the time of the accident but that he had been there during the morning and returned subsequent to it and that he was not an engineer.   Also several witnesses who testified as to the different machines.   Also one witness who was a workman who testified that the machine was in first-class condition, that the clamps were in proper condition and that in some laundries they did not allow the key to remain with the operator of the machine.   There was evidence by appellee to prove that appellant had her head turned at the time of the accident and on the part of the appellant evidence denying that such was the fact.

It is apparent that in this case there was a well-defined conflict in regard to the facts connected with the accident and the reasonable inferences to be drawn therefrom.   Such being the case, the contention of the appellant that the question of negligence under such circumstances was one for the determination of the jury, came within the grip of the established principle that where from the facts and reasonable inferences to be drawn from them, negligence may be presumed, its determination

rests distinctively with the jury.   When such conflict of facts and inferences arises, a court has no right to transcend its province and decide the question of negligence.   A wise administration of justice is best evidenced by maintaining the clearly defined limits of the province of the jury as distinguished from that of the court.

The assignment of error is sustained, the judgment is reversed and a venire de novo awarded.